HAWKINS, Justice,
for the Court:
Walter McCollum appeals from a decree of the Chancery Court of the First Judicial District of Hinds County requiring him to make monthly support payments to his minor child.
This was a suit to establish paternity and child support brought by the Mississippi Department of Public Welfare under two separate statutes, and because the chancellor erred in refusing to sustain either a motion for a change of venue, or motion to make the natural mother a party and hear a cross-bill against her for custody, we reverse and remand. Our reasoning follows.
On December 30, 1981, the State Department of Public Welfare (DPW) filed a bill of complaint against Walter McCollum for child support of his daughter Wendy L. *652 Carr, born October 2, 1973. The complaint was filed in the First Judicial District of Hinds County, the residence of the mother, Queen Collins; McCollum was an adult resident of Simpson County.
McCollum was served on January 11, 1982, with a citation to appear before the Chancery Court on February 25, 1982. On that day he appeared, filed an answer admitting paternity and an ability to support the child, and also a cross-bill praying for custody. He also filed three motions: (1) to change venue to Simpson County; (2) for a continuance; and (3) for the mother to be made a party to the cross-bill.
The chancellor overruled the three motions and conducted a hearing. McCollum testified he had last seen his daughter in July, 1981, when he kept her for three weeks. Also, McCollum testified the child was kept in a ghetto and that he had been unable to see her in December, 1981, when he wanted to assist her with food and clothing.
Queen Collins testified she lived in Jackson, and that she had been receiving welfare assistance for Wendy and her other children. She said' she was married to Joe Willie Collins, but separated from him, and that her home condition was good. She denied ever interfering with McCollum seeing his daughter.
During the hearing the chancellor stated that if McCollum was contributing to Wendy’s support, he was entitled to know where she was at all times, and he was going to provide for visitation rights. He further observed that the welfare department would need to keep McCollum informed as to her whereabouts at all times.
In the course of the hearing, McCollum tendered his wife as a witness. The following transpired:
BY MS. GRIGGINS:
Your Honor, we have a witness.
BY THE COURT:
Are you going to call his wife?
BY MRS. GRIGGINS:
Yes, Your Honor.
BY THE COURT:
I know that she will testify that they have a good home. I am going to give him visitation. (P. 50)
The chancellor did not permit a proffer of proof, and the pertinent portion of his final ruling is as follows (P. 51):
BY THE COURT:
... I am going to find that he is entitled to visitation rights. If you are not satisfied with reasonable visitation rights to have her visit with him and him to visit with her, then on motion of either party if you can’t agree I will fix the visitation rights. I am going to require him to pay $75.00 a month toward the support of the child beginning the first of April.
On March 24, 1982, the chancellor entered a final order: “Order of Filiation and for Child Support”. This decree adjudicated paternity of the child in McCollum, and that he pay $75.00 a month child support to the Hinds County Welfare Department. The decree also awarded reasonable visitation rights to McCollum, permitting him to have the child on stated weekends, holidays, and two weeks during the summer.
LAW
There is no merit to the assignment of error that McCollum was entitled to a continuance.
Miss.Code Ann. § 43-19-31(a), (b) (Chapter 483, Laws 1976), authorizes the DPW to institute paternity and support proceedings against the father of a child who is receiving aid from the department. This statute also authorizes the proceeding to be brought in the county where either the mother, father or child resides.
In this case the complainant stated the proceedings wére being instituted under the authority of the above statute and Miss.Code Ann. § 93-9-9.
Prior to the enactment of the statutes authorizing a child support unit in the DPW, Miss.Code Ann. § 43-19-31, et seq. (Ch. 483, Laws 1976), Miss.Code Ann. § 93-9-9 (Ch. 312, Laws 1962) were in ef- *653 feet. To some extent, their provisions overlap.
Miss.Code Ann. § 93-9-9 is a part of the Mississippi Uniform Law on Paternity, is not limited to actions by the DPW, but provides that paternity may be established upon the petition of the mother, child, or by “any public authority chargeable by law with the support of the child”. Under Miss.Code Ann. § 93-9-9, if paternity is lawfully determined, the liabilities of the father may be enforced. Also, there is a time limitation of one year against the mother’s seeking to secure support under this section.
It may be readily seen that in a proceeding brought by the legal section of the DPW to adjudicate paternity and responsibility for child support, the mother is not a necessary party. The only interest of the DPW is in seeing that the taxpayers are relieved of some, or all of the burden in supporting an indigent child.
A natural father has a right to institute a custody action independently of any action by the DPW, and it would be a most unusual factual situation involving any custody ease between parents in which the DPW would be a necessary party. We certainly have no such case here.
If the DPW had instituted this action solely under the authority of Miss. Code Ann. § 43-19-31, and if the only issue before the chancellor was a cross-bill against the natural mother for custody, and a motion to make her a party, it would have been entirely within the discretion of the chancellor to sustain or overrule the motion, and whether to hear the cross-bill.
He could have overruled the motion, or in the interest of judicial economy heard the original and cross-bills in a single proceeding.
The chancellor was not faced with this precise situation in this case, however. In the first place, the DPW brought the action under both Miss.Code Ann. § 43-19-31 and Miss.Code Ann. § 93-9-9, and in addition to the suit, there was a motion for a change of venue.
Under our recent case of Metts v. State Department of Public Welfare, 430 So.2d 401 (Miss.1983), we held a person charged with being the natural father in a paternity action under both these sections is entitled to be sued in the county of his residence. We held the venue provision of Miss.Code Ann. § 93-9-17 under the Uniform Law on Paternity controlled. This section requires that any paternity suit brought under the provisions of this chapter must be brought in the county where the father resides.
The chancellor could have sustained the motion to make the mother a party and entertained the cross-bill, in which event the Chancery Court of the First Judicial District of Hinds County would have had authority to hear the case, because one of the issues would have been child custody, and Miss.Code Ann. § 93-11-65 would have been applicable. This last section is a child custody statute which would give the Chancery Court of the First Judicial District of Hinds County to hear and determine this issue. Had the chancellor done so, it would have been quite proper to overrule the motion for a change of venue.
Under the law, however, he was obligated to sustain one or the other of these motions.
Moreover, the chancellor decreed visitation rights affecting the mother, and a pre-requisite for such a decree having any binding effect on the mother was that she be a party to the action.
We reverse and remand for the chancellor to determine whether he will hear all issues or transfer venue to Simpson County for further proceedings. Paternity having been established, the only issue remaining is child support.
In this case McCollum was represented by a tax-supported legal aid service. A symbiotic relationship thus exists between a tax-supported DPW legal section which enforces child support and a tax-supported legal aid service defending natural fathers in such suits. If a child custody suit ensues, no doubt the natural mother on public *654 welfare will require the assistance of yet another tax-supported legal aid service, a three-way symbiotic relation supported not by the laws of nature, but by the laws of our society.
In the absence of judicial activism, this Court can do no more than state the facts. Upon remand this case may well become a menage a trois.
REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.